UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KRISTY OWENS,

     Plaintiff,

     v.                            Case No. 3:20-CV-934 JD

FOREST RIVER MANUFACTURING,
LLC,

     Defendant.

**OPINION AND ORDER**

The Defendant, Forest River Manufacturing, LLC ("Forest River"), has moved for summary judgment on the plaintiff, Kristy Owens', claims under Title VII of the Civil Rights Act of 1964. (DE 28.) Mr. Owens' first claim is a sexual harassment claim, alleging that the Forest River plant she worked in was a hostile work environment for women. Ms. Owens' second claim is a retaliation claim, alleging Forest River terminated her after she filed complaints with management regarding the sexual harassment she experienced in the workplace. Forest River has also moved to strike a piece of evidence, a news article, which Ms. Owens submitted with her response to the motion for summary judgment. (DE 34.) For the following reasons, the Court grants the motion to strike and grants the motion for summary judgment.

**A. Factual Background**

Ms. Owens was employed by Forest River from October 2017 until her termination on February 27, 2019. (DE 29-1 at 15:5–7; 72:22–73:16.) Ms. Owens had a quality control role at Forest River, serving as a mid-line inspector under the supervision of team leader Marilyn Miller, and plant manager Andrew Schwartz. (*Id.* at 15:11–17:15; 22:9–23:3.) Her job duties

involved inspecting tow-behind recreational vehicles on the production line, ensuring various components were properly installed, and a handful of production related tasks including installing regulators and spray-painting raw wood on the underside of units. (*Id.* at 15:11-17:21, 18:10–20:8.)

Ms. Owens alleges that during the course of her employment at Forest River, she observed a workplace where employees made sexual remarks and engaged in inappropriate workplace behavior. Ms. Owens alleges five specific incidents of misconduct by her coworkers, and one general pattern of misconduct as the basis for her Title VII lawsuit. The first specific incident is that at some point in June 2018, during a meeting about new unit models and colors, one of which was black, Ms. Owens' supervisor Andrew Schwartz made the comment "Once you go black, you can never go back; isn't that right Cass?" to one of Ms. Owens' female co-workers. (*Id.* at 80:5–81:5; Exhs. U, AA.)

The second specific incident is that on February 6, 2019, Ms. Owens' observed a pair of RV parts, known as regulator caps and colloquially known as "nipples," were placed on the front of one of her units by unknown individuals. (*Id.* at 82:8–19; 87:21–88:22; 98:19–21.) After observing this placement, several of Ms. Owens' male co-workers laughed and one commented "Oh, look, there's boobs on there." (*Id.* at 85:24–86:2.) Ms. Owens then removed the parts from her RV and threw them away. (*Id.* at 88:11–89.) At that time, Ms. Owens told her group leader Jesse Bontraeger that she found the conduct to be inappropriate.[1] (*Id.* at 139:5–142:3.) The third specific incident is that on February 11, 2019, Ms. Owens came into work and there were

---

[1] According to Forest River, the position of group/team leader, held by Mr. Miller and Mr. Bontrager, has no authority to address complaints related to harassment under the company anti-harassment policy. (DE 29-3 ¶ 9, Exh. A.) Further, they are not considered supervisors by Forest River and do not have authority to hire, fire, promote, demote, transfer or discipline employees. (*Id.* at ¶ 11.) Ms. Owens does not dispute this characterization in her response.

approximately five photos of a man, wearing only a thong, posted around the plant (*Id.* at 94:6–96:15.). The photos were labelled as "Christy Miller Age 20." (*Id.* at 94:11–95:5; 201:7–13.) Mr. Miller is a co-worker of Ms. Owens, and the photos depicted Mr. Miller's head edited onto another individual's body. (*Id.* at 95:22–96:4.) It is unknown who posted these photos, but they were taken down shortly after the start of Ms. Owens' shift. (*Id.* at 95:6–15; 201:7–13.)

The fourth specific incident is that on February 26, 2019, group leader Marvin Miller made a comment to group leader Carl Slabaugh over the radio that if something gets cold, he should "put it down his pants to warm it up." (*Id.* at 89:9–91:1; 92:14–19; 99:4–10.) Mr. Bontrager was next to Ms. Owens when this radio exchange occurred and commented "I can't believe he just said that over the radio." (*Id.* at 92:22–93:4.) The fifth specific incident is that at some point during February 2019, Ms. Owens, while working, was singing the Shania Twain song "Love Gets me Every Time" and in response her male coworker Brian Yoder said to her "to me love gets me an erection." (*Id.* at 91:10–19; 99:14–20.) Ms. Owens never filed a complaint about either the Marvin Miller or Brian Yoder incidents with Forest River management. (*Id.* at 142:21–143:5.)

The general pattern of misconduct Ms. Owens alleges is that she overheard "general shop talk and banter" which commonly included offensive and sexually harassing comments. (*Id.* at 100:4–102:11; 100:7–11.) Ms. Owens indicated she complained about this behavior to team leader Marilyn Miller in February 2019 who responded to Ms. Owens by saying "Well that's just how they [male coworkers] are. You've just got to deal with it." (*Id.* 100:7–16; 103:1–6.) Ms. Owens does not recall any specific examples of this banter, nor who the speakers were, nor the specific dates any such banter occurred. (*Id.* at 100:19–102:11.) Ms. Owens did not file any

complaints about this banter and indicated in her deposition it did not bother her enough to merit filing a complaint. (*Id.* at 102:4–10.)

On November 16, 2018, Ms. Owens received a Personnel Action Notice ("PAN") from her supervisor Mr. Schwartz which was labelled as a warning about her job performance. (*Id.* at 26:20–27:15; Exh. A.) At some point after being issued this PAN, Ms. Owens went to see Karl Miller to file a complaint about Mr. Schwartz's June 2018 comment. (*Id.* at 103:18–104:4.) Mr. Miller indicated to Ms. Owens that he wouldn't fire Mr. Schwartz as Mr. Schwartz "had been there five years". (DE 33-1 at 77:16–25.) Ms. Owens does not recall from this conversation whether Mr. Miller expressed to her that he would speak with Mr. Schwartz about his behavior, and does not know if such a conversation between the men ever took place. (DE 29-1 at 104:11–17.)

On February 5, 2019, Ms. Owens was issued another PAN and was counseled about her inadequate job performance by Mr. Schwartz and Ms. Miller. (*Id.* at 61:1–12; Exh. L.) On February 7, 2019, Ms. Owens attended a meeting with Mr. Schwartz and Mr. Miller where they counseled her on her job performance including expressing their beliefs that she was "argumentative" and "not a team player." (*Id.* at 69:6–8; 71:1–9; 128:19–25.) Ms. Owens felt that this meeting was "very intimidating" for her, and that she felt uncomfortable as she was the only female present. (*Id.* at 71:2–9; 170:23–171:5.) It is undisputed, however, that neither Mr. Schwartz nor Mr. Miller physically touched or threatened Ms. Owens at this meeting. (*Id.* at 171:24–172:9.) During the course of her employment, Ms. Owens received some positive feedback as well. This positive feedback was included in "Tent Camper Checklists" which are documents Forest River uses to record the results of RV inspections. These documents reflect a team's overall performance in manufacturing an RV, and four of those issued to Ms. Owens'

4

team featured positive comments such as "Good Job" and "Awesome". (DE 33-5; DE 29-1 at 40:8–25, 54:7–14; 60:8–14.) These positive documents are all from early 2019 and are dated January 4th, 25th, 29th, and February 4th, respectively. (DE 33-5.)

At some point in February 2019 prior to the meeting with Mr. Schwartz and Mr. Miller, Ms. Owens went to Forest River's human resources department and spoke with an unidentified female employee.[2] (DE 29-1 at 108:22–109:10; 128:19–25; Exh. U.) At this meeting, Ms. Owens spoke about the June 2018 incident with Mr. Schwartz, the "nipples" incident, and the pictures of Christy Miller. *(Id.* at 112:4–113:2; 194:23–195:17, 201:20–202:16.)

On February 11, 2019, Ms. Owens contacted Forest River's human resources reporting hotline to file a complaint about the comment Mr. Schwartz made in June of 2018. (*Id.* at 133:6–135:10.) Sixteen days after filing her hotline complaint, Ms. Owens was terminated on February 27, 2019, by Mr. Schwartz who indicated it was due to her poor job performance. (*Id.* at 73:7–74:7; Exh. Q.)

Approximately five months after her termination, on July 19, 2019, Ms. Owens filed a charge of discrimination with the Equal Opportunity Employment Commission claiming sexual harassment and retaliation based on the aforementioned conduct. (DE 1 ¶ 7.) Ms. Owens filed this lawsuit raising those same claims on November 2, 2020. (DE 1.)

### B. Forest River's Motion to Strike (DE 34)

---

[2] Ms. Owens deposition indicates she does not precisely recall when she visited the human resources department and that she went multiple times which may have been December 2018 or February 2019. (*See Id.* at 143:6–145:18.) As Ms. Owens states she reported behavior which occurred in February 2019, the Court, in construing all facts in the light most favorable to her as the non-moving party will assume at least one visit to human resources was in February 2019.

Forest River has also moved for the Court to strike from the summary judgment record a website article (DE 33-6) that Ms. Owens filed with her response as inadmissible hearsay and due to a lack of proper authentication. (DE 34.) Forest River also raised their objections to this document in their reply brief (DE 35 at 9–10.) The article in question appears to be an online periodical article from "RV Pro." It is ostensibly authored by Jordan Fouts, and it recounts allegations of sexual harassment at Forest River by former employee Marla Miller. The article relies on Indiana state court filings from Ms. Miller's lawsuit against Forest River as the source of Ms. Miller's allegations.

Ms. Owens does not substantively respond to this motion, rather she argues that it is procedurally improper based on the newest edition of this District's Local Rule 56. Specifically, Ms. Owens points to Local Rule 56-1(f) which became effective on February 25, 2022. This rule directs parties to address issues of admissibility or materiality of evidence in their summary judgment briefs and prohibits parties from filing separate motions to strike. N.D. Ind. L.R. 56-1(f). The previous version of the Rule required the parties to raise such disputes in separate motions to strike. N.D. Ind. L.R. 56-1(e) (Nov. 18, 2019, Ed.)

This argument is without merit. As Forest River notes, the new version of the Local Rules came into effect the day that their reply was due. Therefore, the prior version of the Rule, requiring them to file a motion to strike, was in effect for 13 of the 14 days available for them to file. Ms. Owens cites to no authority that the Rule 56 amendment was intended to be retroactive and apply to briefings which were already nearly completed. Such a retroactive effect would substantially alter the parties' briefing requirements midway through their briefing schedule.[3]

---

[3] The Court will note that the amendment to Rule 56-1 substantially reshaped motion for summary judgement procedure in this District.

Therefore, because the briefing schedule for this case was set, began, and was almost complete prior to this new version of the Rule taking effect, the Court sees no logical reason why Forest River should be held to a standard only in effect for one day of their briefing schedule.

Even if there were any authority directing such a peculiar outcome, the Court would utilize its authority to suspend the application of the new Rule to Forest River's reply brief. N.D. Ind. L.R. 56-1 n.1 ("The Committee recognizes that summary judgment motion practice may vary substantially from case to case. The Court always has the option to modify or suspend the application of a particular local rule in the interest of justice."). The Court finds that such a suspension would serve the interest of justice by allowing the parties to fully brief the motion according to one, common, set of procedural requirements instead of disrupting one party by requiring them to honor one set of procedural requirements for their motion but another, substantially different, set for their reply.

Moreover, this procedural argument does not address the fact that Forest River raised the same substantive legal arguments as the motion in their reply brief itself. The presence of the hearsay and authentication arguments with citation to authority means the arguments would be properly before the Court even under the new version of the Rule.

The Court now turns to the substance of Forest River's motion. There is no substantive dispute that the proffered article is unauthenticated and is inadmissible hearsay. As previously mentioned, Ms. Owens did not address Forest River's substantive arguments in her response to the motion to strike. Nor did Ms. Owens seek leave to file a sur-reply to the motion for summary judgment addressing the admissibility issue. As such, Forest River's unrebutted substantive arguments are the only ones for the Court to consider. *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020) (holding that the Court is not responsible for crafting

arguments and performing legal research on a party's behalf). Accordingly, the Court agrees with Forest River that the "RV Pro" article is not properly authenticated and constitutes inadmissible hearsay.[4] The Court will also note that it does not see the relevance of this article as it does not pertain to any of the specific offenders or events alleged in this case. In light of these issues, the Court does not find this article to be admissible now or potentially admissible at trial. *See Stevens v. Interactive Fin. Advisors*, 2015 WL 791384, *2 (N.D. Ill. Feb. 24, 2015) (inadmissible evidence may be considered at summary judgment if the court concludes the evidence could become admissible at trial). Therefore, the motion to strike is granted.

### C. Legal Standard

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not a tool to decide legitimately contested issues, and it may not be granted unless no reasonable jury could decide in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

However, a party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the

---

[4] Given the lack of opposition the Court will not belabor the point of why the article is hearsay, but will briefly note that it specifically finds the article contains two levels of hearsay. The first being the statements in the article by author Jordan Fouts, and the second level being statements Ms. Miller hade in her state court about sexual harassment at Forest River (which were then described or restated by Fouts). Both are being offered by Owens for the truth of the matter asserted in the statements. *See Chi. Firefighters Local 2 v. City of Chicago*, 249 F.3d 649, 654 (7th Cir. 2001).

court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). There must be more than a mere scintilla of evidence in support of the opposing party's position and "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp*., 573 F.3d 401, 407 (7th Cir. 2009); *Anderson*, 477 U.S. at 252. Instead, the opposing party must have "evidence on which the jury could reasonably find" in his or her favor. *Anderson*, 477 U.S. at 252.

### D. Discussion

Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Ms. Owens brought two claims against Forest River under Title VII, a hostile work environment claim and a retaliation claim. Forest River has moved for summary judgment on both claims and the Court will address each in turn.

### (1) *Sexual Harassment*

Ms. Owens' first claim is for sexual harassment under Title VII. Ms. Owens alleges that she experienced a sexually hostile work environment while she was an employee at Forest River and seeks to hold the company liable. Forest River argues they are entitled to summary judgment because Ms. Owens has not established the work environment contained harassment which was sufficiently severe or pervasive to state a claim under Title VII and there is no basis for Forest River's liability. The Court agrees with Forest River that the conditions described by Ms. Owens

do not rise to the level of severe or pervasive harassment and grants the motion for summary judgment.

To have her hostile work environment claim survive summary judgment, Ms. Owens must present evidence of four elements: (1) unwelcome harassment, (2) based on a protected characteristic, (3) that was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment, and (4) a basis for employer liability. *Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 977 (7th Cir. 2021) (*en banc*) (citing *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 600 (7th Cir. 2021)). A successful hostile work environment claim based on sexual harassment does not need to involve sexual conduct, but can be successful by showing the work environment was sexist. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018).

Forest River argues that Ms. Owens has not established the third and fourth elements of this claim. The parties do not seem to dispute that the first and second elements are satisfied, therefore the Court does not need to analyze those elements. Further, Ms. Owens concedes that the alleged harassment she experienced was not severe as defined under Title VII and only argues that it was pervasive, which further narrows the scope of the Court's review. (DE 33 at 7.) Therefore, the Court will address whether Ms. Owens has presented evidence from which a reasonable fact finder could conclude she faced pervasive harassment.

(a) *Ms. Owens' alleged experiences do not rise to the level of pervasive harassment under Title VII*

The third element of a hostile work environment claim requires the unwelcome conduct to be severe or pervasive from both a subjective and an objective point of view. *Howard*, 989

10

F.3d at 600. To be considered severe or pervasive enough to create a hostile work environment, the conduct at issue must be "extreme." *Id.* (internal quotations omitted). This test is not, and by its nature cannot be, "mathematically precise." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). Determining whether conduct rises to this level is a fact intensive inquiry which requires evaluating the totality of the circumstances. *Demkovich*, 3 F.4th at 977. This includes "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Howard*, 989 F.3d at 600 (quoting *Harris*, 510 U.S. at 22). Further, "isolated and minor incidents of questionable conduct generally will not warrant a conclusion of sexual harassment." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (internal citation omitted).

   The Court turns to the conduct at issue in this case. As previously mentioned, Ms. Owens concedes that she has not presented evidence of severe harassment and is instead only advancing a theory of pervasive harassment. (DE 33 at 7.) Ms. Owens characterizes the harassment as taking place over a period of eight months and coming from a variety of sources. Ms. Owens alleges the five previously enumerated specific incidents, one in June 2018 and four in February 2019, and the "generalized banter" which she was subjected to throughout her tenure constitutes pervasive harassment. (DE 33 at 7–8.) Forest River argues that Ms. Owens claim fails to meet the standard for Title VII because her five alleged specific incidents of harassment are less severe than the conduct found by the Seventh Circuit in *Swyear v. Fare Foods Corporation* to not be severe or pervasive harassment. 911 F.3d 874 (7th Cir. 2018). Ms. Owens argues the facts of her case are distinct from *Swyear* and she has thus met her burden. The Court disagrees and will grant summary judgment to Forest River.

11

 The Court will make a few initial observations. First, Ms. Owens does not allege that any of the conduct she observed or experienced was physically threatening or humiliating to her. [5] Second, it is undisputed that Ms. Owens does not allege she was physically touched or the target of sexual advances by any Forest River employee. Third, with the exception of her allegation regarding "generalized banter" in the workplace, which remains vague in description, the remaining five incidents are relatively isolated from one another in time, committed by different individuals, and sometimes not directed specifically towards her. With one occurring in June 2018 and the remaining four in February 2019 spaced out by at least several days.

The Court cannot find that these events constitute pervasive harassment under Title VII. The five specific instances of harassment identified by Ms. Owens, even when considered together, are less severe than the conduct described in *Swyear* and are therefore insufficient to meet the high standard for pervasive harassment. Similar to *Swyear*, the majority of the specific conduct being alleged was not directed at Ms. Owens. Rather it was things she observed or overheard in the workplace. [6] This covers four of the five specific incidents Ms. Owens alleges: the comment Mr. Schwartz made to a different coworker in June 2018, the "Christy Miller" photos posted around the plant in February 2019, Marvin Miller's comment over the radio to a different coworker in February 2019, and the "nipples" placed on the front of a unit on Owens'

---

[5] The Court notes that Ms. Owens has alleged she felt "intimidated" during a meeting with Mr. Schwartz and Mr. Miller and was not comfortable at meetings when no other female employee was present. (DE 33 at 11.) However, Ms. Owens does not allege she was threatened during this meeting, or at any time by anyone. Further, Ms. Owens does not provide explanation of the basis for her feelings or why such meetings allegedly hampered her ability to do her work.

[6] Owens disputes this point by alleging she didn't merely overhear offensive conversations, but rather her coworkers "actively engaged in offensive language in her presence" (DE 33 at 10). The Court construes this as her alleging co-workers initiated offensive conversations within her earshot with the intention of making her uncomfortable. However, Ms. Owens provides no reference to any evidence which would support her coworkers had such an intent. As such the Court finds this argument to be speculative and waived as underdeveloped.

line in February 2019. This is similar to *Swyear* where the female plaintiff overheard her male coworkers use crude and offense nicknames such as "Bitchy Ritchie" to refer to customers, openly discussed the sexual activities of employee Russell Scott, and disparaged the women he associated with. *Swyear*, 911 F.3d at 878. It is unclear how many specific incidents were being discussed in *Swyear*, but the Seventh Circuit described the employees using the offensive nicknames "often." *Id.* The Court finds this to be sufficiently analogous to the instant facts which involve five incidents over eight months.

The Seventh Circuit has held that merely overhearing jokes or comments in poor taste "militates a finding that the conversations were 'merely offensive' as opposed to physically threatening or humiliating to [the plaintiff]." *Swyear*, 911 F.3d at 881. The Seventh Circuit has also noted that "'The American workplace would be a seething cauldron if workers could with impunity pepper their employer … and the courts with complaints of being offended by remarks and behaviors unrelated to the complainant except for his having overheard, or heard of, them.'" *Id.* at 882 (quoting *Yuknis v. First Student, Inc.*, 481 F.3d 552, 556 (7th Cir. 2007).

Bearing this binding precedent in mind, the Court cannot find these four incidents would amount to pervasive harassment given none of them were directed at Ms. Owens. While these alleged events are unprofessional and inappropriate, they are not severe or threatening, and are not so incessant they could meet the standard for liability.

The only conduct that Ms. Owens alleges was directed at her is not comparable to the conduct directed at the plaintiff in *Swyear*. As previously explained, Ms. Owens alleges that while she was singing a song called "Love Gets Me Every Time", her co-worker Brian Yoder remarked to her "To me love gets me an erection." (DE 29-1 at 91:10–19.) In contrast, *Swyear* involved the plaintiff's supervisor, Russell Scott, making repeated romantic overtures towards

Swyear while on an overnight business trip together. This included: Scott touching Swyear's arm, repeatedly placing his hand on her lower back, standing in close proximity to her, suggesting they go skinny dipping in the hotel pool, repeatedly telling her that he was single as he became inebriated during dinner, making his way into Swyear's hotel room to lie on her bed and suggest they could share a bed and be "cuddle buddies," and then after he left the room he repeatedly returned to knock on her hotel room door and called the room phone several times. *Id.* at 879.

The conduct by Scott is much more egregious and extensive than Mr. Yoder's alleged conduct. As the Seventh Circuit found the conduct by Mr. Scott did not amount to severe or pervasive harassment, the Court consequently cannot find that Mr. Yoder's conduct rises to that level either. *Id.* at 882. Ms. Owens tries to distinguish *Swyear* by arguing in that case the employer took corrective action to remedy the harassment while here Forest River did nothing about Mr. Yoder's comment. It is important to note, however, that the response by the employer was not the dispositive reason for the Court finding that actions by Scott did not create a hostile or abusive environment. *Id.* Rather it was because his conduct, while entirely inappropriate, was not as severe as acts which the court had previously found to create a hostile or abusive environment. *Id.* Further, unlike Ms. Swyear, Ms. Owens never reported Mr. Yoder's comment to her employer. (DE 29-1 at 142:24–143:1.) Consequently, it is unclear how Forest River would have learned about the incident and the need to take corrective action. Ms. Owens does not provide a meritorious theory by which Forest River would have become aware of it.[7] As such, the Court cannot weigh the alleged lack of corrective action against Forest River.

---

[7] Ms. Owens argues Forest River should have discovered this incident while investigating her report about Mr. Schwartz's comment. (DE 33 at 14.) Ms. Owens, however, does not explain why a "reasonable" investigation into a June 2018 incident involving one coworker would unearth unrelated

Regarding Ms. Owen's sixth allegation of "generalized banter", the Court cannot find there is enough evidence regarding this alleged behavior to assign the allegation anything more than minimal weight. Therefore, there is not enough evidence for a reasonable jury to find this alleged generalized banter constituted pervasive harassment, either alone or in conjunction with the five specific allegations. Ms. Owens does not allege that any of this banter was directed at her. As noted previously, the Seventh Circuit has held that merely overhearing jokes or comments in poor taste "militates a finding that the conversations were 'merely offensive' as opposed to physically threatening or humiliating to [the plaintiff]." *Swyear*, 911 F.3d at 881. This weighs against the Court finding that any banter which was only overheard by Ms. Owens constitutes conduct which is so pervasive that it creates a hostile or abusive working environment. Further, Ms. Owen's agreement with the characterization of these comments as "general shop talk" which she did not find bothersome enough to file a complaint about, at least until the alleged retaliation against her began, makes the Court wary of assigning great weight to these comments and their potential effect on the workplace (DE 29-1 at 101:23–102:13.)

Ms. Owens' request that the Court take the banter into consideration in evaluating her overall work environment, along with her more specific allegations, is untenable. There are no specific examples of statements, no identified speakers, no times, and no specific places for this alleged conduct. (*See* DE 29-1 at 100:1–22 (Ms. Owens indicating she cannot recall the details of any other incident besides the five enumerated incidents).) Given the lack of detail, the Court cannot assess the severity or frequency of these alleged comments and can therefore not assess

---

alleged misconduct by a different coworker several months later. The Court will not attempt to furnish an explanation on her behalf. *Shipley*, 947 F.3d at 1062–63. The Court also notes that while Ms. Owens' deposition states she "might" have mentioned Mr. Yoder's comment to Forest River's Human Resources department (DE 29-1 at 112:18–25), her response did not construe the report as doing so and therefore the Court will not either (*See* DE 33 at 4).

their impact on the workplace.[8] As such, the Court can only assign minimal, if any, weight to this allegation given its lack of supporting evidence in the record.

Ms. Owens also does not describe how this alleged banter altered the conditions of her employment, which is an essential component of a hostile work environment claim. *Demkovich*, 3 F.4th at 977. Further, the evidence in the record actually indicates this behavior did not alter the conditions of her employment. Ms. Owens, in her deposition, acknowledges that the banter did not bother her enough to merit a complaint to management. (DE 29-1 at 102:4–10.) Therefore, even if the Court were to assign any weight to this allegation, it would still be insufficient to establish Ms. Owens' hostile work environment claim.

This is not to say Ms. Owens could only prevail with an eidetic memory or an exhaustive ledger with such details for every instance of offensive workplace banter. Nonetheless, the Court needs significantly more than what she has proffered, such as corroborating evidence, specific examples, or contextualizing details about these comments.

Ms. Owens also argues that the conduct she experienced was so incessant that it qualifies as pervasive. This proposition is recognized in the law. *See Jackson v. Cty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) (holding that conduct which is "an incessant part of the workplace environment may, in the end, be pervasive enough and corrosive enough that it meets the standard for liability.") The conduct alleged by Ms. Owens, however, does not meet the threshold. In *Jackson*, the court recognized behavior occurring daily as incessant. *Id.* This is distinct from the majority of the incidents described by Ms. Owens which occurred days, weeks,

---

[8] The Court notes that Ms. Owens' response indicates the banter occurred "regularly" or "daily" but provides no citation to support in the record for that assessment. (DE 33 at 8.)

or months apart from one another.[9] The alleged banter is the only conduct which occurred repeatedly, but there is no evidence in the record indicating how frequently it occurred. Also, for the reasons previously discussed, the Court only affords minimal weight to that specific allegation given the lack of detail and supporting evidence. Further, for the reasons previously discussed, the conduct Ms. Owens experienced was not particularly severe when compared to conduct described in Seventh Circuit precedent as not being severe or pervasive. Consequently, the Court is wary of concluding that it was "corrosive" enough to create a hostile work environment.

Therefore, the Court finds that Ms. Owens has not established the conduct she allegedly experienced at Forest River was so pervasive that it altered the conditions of her employment and created a hostile or abusive workplace. Accordingly, Ms. Owens has not established the third element of her sexual harassment claim and Forest River is entitled to summary judgment.

(b) *The Court need not analyze whether Ms. Owens established Forest River's liability*

Forest River also argues that Ms. Owens has not established they are liable under Title VII, and thus element four is not satisfied. An employer can be liable for hostile work environment claims either through strict liability, which is incurred when a supervisory employee is involved in the unlawful employment practice, or through negligence which is incurred when the employer is "negligent in either discovering or remedying the harassment." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 904 (7th Cir. 2018). Forest River

---

[9] The Court does not intend to suggest that only conduct which occurs on a daily basis can be considered "incessant" or rise to the level of pervasive harassment.

argues Ms. Owens cannot establish liability under either of these theories. Specifically, Forest River argues that Ms. Owens cannot establish strict liability because the comment involving Mr. Schwarz falls outside the timeline of her EEOC complaint, as the complaint was filed over 300 days after that incident took place. *See Chatman v. Bd. of Educ. of Chi.*, 5 F.4th 738, 744 (7th Cir. 2021) (it is an affirmative defense if a plaintiff fails to timely file an EEOC complaint within 300 days of the conduct). Further, Forest River argues that Ms. Owens cannot establish negligence from the co-worker conduct because Forest River either had no knowledge of those incidents or the behavior was immediately rectified.

However, based upon the Court's conclusion that Ms. Owens has not satisfied her burden on element three, the Court does not need to analyze element four. Even if the Court assumes, without deciding, that Forest River is liable, Ms. Owens' failure to prove element three is fatal to her sexual harassment claim.

As Ms. Owens has not established that the conduct she experienced was so pervasive that it altered the conditions of her employment and created a hostile or abusive working environment, Forest River is entitled to summary judgment on this claim.

### (2) *Retaliation*

Ms. Owens' second claim is for retaliation under Title VII. Ms. Owens alleges that Forest River terminated her in retaliation for her November 2018 complaint about an offensive comment made by her supervisor Mr. Schwartz at a team meeting in June 2018. Forest River argues they are entitled to summary judgment because Ms. Owens was terminated due to her poor job performance and not on account of her complaint. The Court agrees with Forest River and grants summary judgment on this claim.

18

For her retaliation claim to survive summary judgment, Ms. Owens must produce evidence that (1) she engaged in statutorily protected activity, (2) a materially adverse action was taken against her by her employer, and (3) there is a causal connection between (1) and (2). *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022). A plaintiff establishes a causal connection by showing that the defendant "would not have taken the adverse … action but for [her] protected activity. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) (quoting *Greengrass v. Int'l Monetary Sys., Ltd.*, 776 F.3d 481, 486 (7th Cir. 2015)). A plaintiff may establish this causal relationship through the direct method, or the indirect method. *Id.* The direct method being evidence such as an admission by an employer of an unlawful aim, and the indirect method being an inference assembled from the evidence in the record that it is more likely than not that discrimination lay behind the adverse action. *Id.* Regardless of the specific method being argued, the determinative question for the Court is whether the evidence would permit a reasonable fact finder to conclude that the plaintiff's protected characteristic caused the adverse employment action. *Reives v. Ill. State Police*, 29 F.4th 887, 892 (7th Cir. 2022). Ms. Owens concedes she does not have direct causal evidence and indicates she is pursuing the indirect theory. (DE 33 at 18.)

The indirect method of proving causation is most effectively assessed under the *McDonnell Douglas* burden shifting framework. *Swyear*, 911 F.3d at 885 (referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Reives*, 29 F.4th at 892 (holding the *McDonnell Douglas* framework is consistent with *Ortiz v. Werner Enterpr., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016)). As applied to the indirect method, that framework requires the following. At the first stage, the plaintiff must show a *prima facie* case that she (1) engaged in protected activity, (2) she performed her duties according to employer expectations, (3) she

suffered adverse action, and (4) she was treated less favorably than similarly situated employees who did not engage in protected activity. *Id.*

If the plaintiff satisfies her burden at the first stage, the analysis advances to the second stage where the burden shifts to the employer to provide a legitimate and non-discriminatory reason for taking the adverse action. *Id.* If the employer establishes a legitimate reason, the burden then shifts back to the plaintiff for the third stage of the analysis where she is required to show that the employer's proffered reasons were not true and rather, they were a pretext for retaliating against her. *Id.* A plaintiff's contention that the employer's reasons are pretextual must be corroborated by some objective evidence and cannot rely solely on her subjective impression. *O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir. 1997). Further, the Court considers all the evidence in the record in determining whether a party has met their respective burden. *Ortiz v. Werner Enterpr., Inc.*, 834 F.3d 760, 766 (7th Cir. 2016).

Forest River argues they are entitled to summary judgment on Ms. Owens' retaliation claim because they have satisfied their burden at step two of the *McDonnell-Douglas* framework. Specifically, they argue they have offered evidence of Ms. Owens' poor job performance as a legitimate reason for her termination, and she has not provided evidence establishing Forest River's rationale was pretextual. Several pieces of evidence support the assessment of Ms. Owens' poor job performance. Specifically, a series of documents about her job performance prepared by her supervisor Mr. Schwartz and her own deposition testimony that Mr. Schwartz was counseling and disciplining her over her job performance in the lead up to her termination. (DE 29-1 at 29:12–15, 51:8–11; 63:6–9; 71:16–19; 78:8–11.) Forest River also argues that Ms. Owens cannot establish a retaliatory motive for her termination because she has not produced any evidence suggesting Mr. Schwartz knew about her complaint when he decided to terminate

her. *See Lesiv*, 39 F.4th at 915 ("Knowledge of the protected activity [by the relevant superiors] is necessary to show causation for a retaliation claim.").

Ms. Owens argues that she has created a genuine dispute of material fact over whether or not Forest River's rationale is pretextual by offering evidence that she received positive job performance evaluations as well as poor evaluations. Further, she argues that a reasonable inference can be made that Mr. Schwartz knew of her complaint due to the "suspicious timing" of her termination after her complaint, and because it can be inferred he learned of her complaint from discussions with other Forest River employees or his own deductions. The Court disagrees.

> (a) *There is no genuine dispute of the material fact Mr. Schwartz's performance evaluations were honest assessments*

Ms. Owens proffered evidence of positive performance reviews is not sufficient to persuade the Court there is a genuine issue of material fact over whether Mr. Schwartz's negative evaluations were pretextual. As an initial matter, in her deposition testimony Ms. Owens concedes she has no information which would lead her to believe that Mr. Schwartz's negative evaluations of her are anything less than his honest belief about her performance. (DE 29-1 at 29:12–15, 51:8–11, 63:6–9, 71:16–19, 78:8–11.) Further, Ms. Owens acknowledges the possibility that her job performance was inadequate at times, such as neglecting to spray paint holes in the bottom of her RVs which was part of her job duties. (*Id.* at 50:7–11; 51:5–7.)

Further, the Court finds Ms. Owens' arguments about her positive performance reviews to be waived as underdeveloped. In her response's argument section, Ms. Owens briefly states she "received positive feedback regarding her work and was consulted regarding issue [*sic*] with other workers on her production line." (DE 33 at 19.) This section does not discuss the format of

the positive feedback or explain why that positive feedback contradicts Mr. Schwartz's evaluations.[10] While her Statement of Material Facts helps to fill in this argument somewhat, as it mentions the documents with her positive feedback were the "Tent Camper Checklists," it still falls short of the analysis required to explain why this feedback establishes Mr. Schwartz's rationale was merely pretense. (DE 33 at 5.)

In the alternative, even if the Court did not find this argument to be waived, the presence of positive feedback on the checklists does not create a genuine dispute of material fact. The positive employment comments are reflected on several "Tent Camper Checklists" ("Checklists"). As previously discussed, the Checklists are documents Forest River uses to record the results of RV inspections. Ms. Owens notes in her deposition that the Checklists, unlike Schwartz's reports about her individual conduct, are about the overall team's work on a unit. (DE 29-1 at 40:8–25, 54:7–14, 60:8–14.) Further, she indicates that she does not have any evidence or reason to believe the Checklists were prepared by Mr. Schwartz or any other Forest River employee involved in her discipline or termination. (*Id.* at 40:5–11; 54:2–4; 60:4–5.) Additionally, of some thirty-four Checklists, Ms. Owens' deposition testimony indicates that only four Checklists contained positive comments. (*Id.* at 206:16–208:8.) Therefore, it is unclear to the Court why the presence of positive comments on an evaluation form which reviewed the products of Ms. Owens' entire team, prepared by an unknown author, should be viewed as

---

[10] The Court will also note that the citations to the record following this sentence do not seem to support this proposition. The first citation is to Exh. D, Forest River's response to interrogatories, at question No. 4 . Forest River's response to this question does not mention positive feedback about Ms. Owens but rather provides a general direction to her personnel records in answering questions about the nature of her employment. The second citation is to Ms. Owens' deposition at 33:4–14. (DE 29-1 at 33:4– 14.)  While this section does involve her discussing other workers on the production line, it seems to be in the context of management addressing a complaint she raised about her coworkers speaking Dutch, and not her being consulted at the initiative of management.

undermining the individual evaluations of Ms. Owens' performance prepared by her immediate supervisor.

The Court finds that there is no genuine dispute of the material fact that Ms. Owens' performance evaluations prepared by Mr. Schwartz reflected his honest opinion about the quality of her work. Accordingly, Ms. Owens has not sustained her burden at step three of the *McDonnell Douglas* framework and has not established a claim for retaliation under Title VII.

> (b) *Ms. Owens has not provided sufficient evidence to establish Mr. Schwartz knew of her complaint when he made the decision to terminate her*

The Court would also find that Ms. Owens' retaliation claim fails because she has not established Mr. Schwartz knew of her complaint at the time he decided to fire her. As previously stated, a retaliation claim cannot survive if there is no evidence that the supervisor knew of the protected behavior at the time that he made the termination decision. *Lesiv*, 39 F.4th at 915.

Ms. Owens argues there are three reasons why there is enough evidence for the Court to make a reasonable inference that Mr. Schwartz knew of her November 2018 complaint. First, that Karl Miller told Mr. Schwartz of the complaint when the two men consulted, along with Marilyn Miller, about whether to fire Ms. Owens. Second, Mr. Schwartz could have inferred Ms. Owens was the complainant from the existence of the investigation. Third, Ms. Owens implies there is suspicious timing between her complaints to Forest River and her February 2019 termination.

The Court will begin with Ms. Owens' argument that Mr. Schwartz was told of her complaint by Mr. Miller. As a reminder, Ms. Owens filed her November 2018 complaint regarding Mr. Schwartz's comment with Mr. Miller and therefore Mr. Miller was aware she

made the complaint. Ms. Owens argues that Mr. Miller shared this information with Mr.

Schwartz when these two men, and Ms. Marilyn Miller, allegedly conferred on whether Ms.

Owens should be fired in February 2019. The crux of Ms. Owens' argument is that "It is

reasonable to infer that before making a major employment decision the parties involved would

discuss all aspects of the employment." (DE 33 at 19.)

  The Court disagrees and finds this proposed inference amounts to speculation. Ms.

Owens provides no explanation as to why this topic would have arisen during discussion about

her possible termination or what motive Mr. Miller might have to share that information with

Mr. Schwartz. Moreover, Ms. Owens does not explain her reasoning for why Mr. Miller would

choose to violate Forest River policy, which requires keeping complaints as confidential as

possible, at the moment where a violation of that policy would have the most dramatic impact

after honoring that policy for several months. (DE 33-3 at 4.)  Finally, in her own deposition Ms.

Owens indicates she has no information suggesting Mr. Schwartz knew she had filed a complaint

with Mr. Miller. (DE 29-1 at 104:11–17.) This is evidence which weighs against inferring Mr.

Miller disclosed that fact. This speculative series of proposed inferences is insufficient for Ms.

Owen to meet her burden that Mr. Schwartz had actual knowledge of her protected activity.

*Eaton v. J.H. Findorff & Son, Inc.*, 1 F.4th 508, 512–13 (7th Cir. 2021) (a plaintiff must establish

the decision maker had actual knowledge of the protected activity, "It is not sufficient that a

decision-maker could have or even should have known about the employee's complaint.").

  The Court next addresses Ms. Owens' argument that Mr. Schwartz likely inferred she

filed a complaint against him from the investigation. Ms. Owens' theory is that when he was

informed of an investigation against him by Forest River over the June 2018 comment, Mr.

Schwartz was able to deduce she was the complainant even if the company adhered to their

24

confidentiality policy and did not disclose her name.[11] Ms. Owens' sole basis for this is that she is "one of the few women who worked with Mr. Schwartz." (DE 33 at 19.) The Court disagrees and finds this argument to be speculative. As an initial matter, Ms. Owens never proffers any evidence that "few women" work with Mr. Schwartz. Further, the June 2018 comment was made during a meeting with several other employees present and the comment itself was directed at another female coworker, not Ms. Owens. Therefore, it is entirely speculative to conclude that Mr. Schwartz knew Ms. Owens was the one who filed the complaint based solely on her presence in the meeting where it was made along with several other employees. This theory only amounts to establishing the possibility that Mr. Schwartz could have known Ms. Owens filed the complaint which is insufficient to satisfy her burden. *See Eaton*, 1 F.4th at 513.

The Court now turns to suspicious timing. Ms. Owens does not present a suspicious timing theory in her briefing, but some of her factual characterizations imply such an argument. *See e.g.* (DE 33 at 4 (noting she was terminated sixteen days after her hotline complaint); *Id.* at 18 (noting Mr. Schwartz allegedly only began to discipline Ms. Owens after she began speaking out.)) While Forest River replies to this argument on the merits in their briefing, the Court deems this argument waived as underdeveloped given Ms. Owens never explicitly raises the suspicious timing theory nor provides citations to authority to support such an argument. *Shipley*, 947 F.3d 1056, 1062–63 (holding arguments which are underdeveloped and lacking legal support are waived).

---

[11] Ms. Owens argues that according to Forest River policy, the findings and conclusions of an investigation are reviewed with all employees involved, which would reveal her involvement. (DE 33 at 19–20 (citing DE 33-3 at 3)). By its own language, however, this policy does not seem to require the disclosure of the complainant's identity and Ms. Owens proffers no other evidence that such a revelation occurred in this case.

Even if a suspicious timing theory was not waived, it would fail as it would require the Court to draw an unreasonable inference by finding either that the three-month span between her November 2018 complaint and her February 2019 termination, or the sixteen days between her hotline complaint and termination, was suspicious enough to support an inference of causation.

The Seventh Circuit has cautioned that "suspicious timing is rarely enough to create a triable issue." *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021) (quoting *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009). To prevail on such an argument the plaintiff is also required, as "a threshold matter" to show that the defendant was aware of the protected conduct. *Id.* (internal quotations and citations omitted). Further, generally only a few days may elapse between the protected activity and the adverse action in order to infer causation. *Id.* at 578–79; *see also Kidwell v. Eisenhower*, 679 F.3d 957, 966–67 (7th Cir. 2012) (discussing cases which found one-to-three-day gaps were sufficiently close, but a two-month gap was not); *but cf. Rowlands v. United Parcel Serv.-For Wayne*, 901 F.3d 792, 802 (7th Cir. 2018) (finding a one-month gap to be sufficiently close when there was evidence of pretext for the termination).

For the reasons previously discussed, the Court finds that Ms. Owens has not shown that Mr. Schwartz was aware of her protected action of filing the November 2018 complaint to Mr. Miller. Further, Ms. Owens does not argue or point to any evidence in the record which would suggest Mr. Schwartz knew of her February 2019 complaint to the Forest River hotline. Therefore, she fails to satisfy the threshold question of the suspicious timing inference. Moreover, even if Mr. Schwartz had been aware of that conduct, the several month span between her November 2018 complaint and her termination makes inferring causation unreasonable as it is well outside the range of a few days which the Seventh Circuit has held governs most cases.

The same holds true for the sixteen-day span between her hotline complaint and her termination. While a sixteen-day span could give rise to a more plausible suspicious timing claim than the three-month claim, it is still longer than the typically accepted few days and there is no evidence of pretext in the record before the Court. *See Kidwell*, 679 F.3d at 966–67 (one-to-three-day gaps were sufficiently close, but a two-month gap was not); *see also Rowlands*, 901 F.3d at 802 (one month gap was sufficiently close when coupled with evidence of pretext). Ms. Owens has not articulated why her case should not fall under the general framework.

Ms. Owens also seems to imply an argument that the timing is suspicious because she allegedly only began to receive negative job evaluations in November 2018 after she filed her complaint. (DE 33 at 18–19). The Court notes that the first performance evaluation with negative feedback in the record is a Personnel Action Notice ("PAN") dated November 16, 2018. (DE 29-1 at Exh. A.) However, this argument is unavailing for three reasons. First, it does not address the fact that Ms. Owens has not established Mr. Schwartz was ever aware of her complaint against him. Second, Ms. Owens admits she filed her November 2018 complaint after she was issued her first PAN with negative feedback. (DE 29-1 at 104:5–10). Third, the November 16 PAN also refers to Ms. Owens previous behavior being inadequate, before doing "better for a while" and then returning to the inadequate "base 1." (DE 29-1 at Exh. A.) This language undermines Ms. Owens' contention that she only began to receive negative feedback on her work in November 2018. The Court will also note, as previously discussed, Ms. Owens concedes the critiques of her performance have at least some merit which undermines a conclusion that Mr. Schwartz's disciplinary efforts were purely pretextual. (*Id.* at 50:7–11; 51:5–7.)  Therefore, even if the suspicious timing argument was not waived as underdeveloped, the Court would find

that Ms. Owens has not established an inference of causation based on the timing between her complaint and her ultimate termination.

Accordingly, the Court finds that the evidence would not permit a reasonable fact finder to conclude that Ms. Owens' protected action of filing a complaint caused her termination by Forest River, and thus Forest River is entitled to summary judgment on her retaliation claim.

### E. Conclusion

For the previously stated reasons, Forest River's motion to strike (DE 34) and motion for summary judgment (DE 28) are GRANTED and Ms. Owens' claims are dismissed with prejudice. The Clerk is DIRECTED to close this case.

SO ORDERED.

ENTERED: September 28, 2022

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court